UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

Thurgood Marshall U.S. Courthouse   40 Foley Square, New York, NY 10007 Telephone: 212-857-8500

MOTION INFORMATION STATEMENT

Docket Number(s): 23-464 _____   _____ Caption [use short title] _____

Motion for: recalling the mandate, reinstating this appeal, authorizing me to

submit an oversized motion, granting me a change of venue, and granting me

additional relief.

Set forth below precise, complete statement of relief sought:

I seek an order that will recall the mandate and reinstate this appeal while also

granting me additional relief that partly consists of a change of venue for this

appeal by reassigning it to a different U.S. Court of Appeals

as well as authorization to submit an oversized motion.

Komatsu v. City of New York

_____

_____

MOVING PARTY: Towaki Komatsu _____   OPPOSING PARTY: See attached _____

☑ Plaintiff          ☐ Defendant

☐ Appellant/Petitioner   ☐ Appellee/Respondent

MOVING ATTORNEY: Towaki Komatsu _____   OPPOSING ATTORNEY: Jamison Davies _____

[name of attorney, with firm, address, phone number and e-mail]

Towaki Komatsu

55 West 110th St., New York, NY 10026

Tel: 305-784-7450/ E-mail: Towaki_Komatsu@yahoo.com

Jamison Davies

New York City Law Department, 100 Church St., NY, NY

10007/ Tel:  212-356-2490/ e-mail: jdavies@law.nyc.gov

Court- Judge/ Agency appealed from: U.S. District Judge Valerie Caproni

Please check appropriate boxes:

Has movant notified opposing counsel (required by Local Rule 27.1):
☑ Yes   ☐ No (explain): _____
_____

Opposing counsel's position on motion:
☐ Unopposed   ☐ Opposed   ☑ Don't Know
Does opposing counsel intend to file a response:
☐ Yes   ☐ No   ☑ Don't Know

FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUCTIONS PENDING APPEAL:

Has this request for relief been made below?   ☐ Yes ☑ No
Has this relief been previously sought in this court?   ☑ Yes ☐ No
Requested return date and explanation of emergency: _____
As soon as possible. This Court and other judges issued decisions after this
Court's 8/2/23 decision in this appeal that repudiate this Court's 8/2/23 decision. Also, this Court
and the district court unlawfully didn't consider relevant evidence that confirms that the dismissal
of the district court action was baseless, biased, and prejudicial.

Is oral argument on motion requested?   ☑ Yes   ☐ No (requests for oral argument will not necessarily be granted)

Has argument date of appeal been set?   ☐ Yes ☑ No If yes, enter date: _____

Signature of Moving Attorney:

Towaki Komatsu _____ Date: 2/5/24 _____   Service by: ☐ CM/ECF   ☑ Other [Attach proof of service]

Form T-1080 (rev.12-13)

**A.** **Second Circuit Docket number:** 23-464

**B.** **Opposing Parties**:

| | | | |
|---|---|---|---|
| 1. | The City of New York | 8. | NYPD Officer Avdo Javorovac |
| 2. | NYPD Sergeant Frank Amill | 9. | NYPD Officer Brian Leo |
| 3. | NYPD Officer John Avellino | 10. | NYPD Officer Liang Lin |
| 4. | NYPD Officer Andrew Cummings | 11. | NYPD Officer Steven Perez |
| 5. | NYPD Officer Ruben Farrell | 12. | NYPD Officer Claudia Rodriguez |
| 6. | NYPD Officer Saquoi Harris | 13. | NYPD Captain Joseph Tompkins |
| 7. | NYPD Officer Robert Holmes | | |

**C.** **Opposing Attorney's Contact Information**:

- **Name**: New York City Corporation Counsel Sylvia Hinds-Radix (her office appears to have designated Jamison Davies who works for it to represent the defendants listed above)

  **Mailing address**:

  New York City Law Department
  100 Church Street
  New York, New York 10007

  Tel: (212) 356-1000
  E-mail: ServiceECF@law.nyc.gov

  Jamison Davies
  Tel: (212) 356-2490
  E-mail: davies@law.nyc.gov

UNITED STATES COURT OF APPEALS FOR
THE SECOND CIRCUIT
------------------------------------------------------- X

Towaki Komatsu,                                          Docket Number: 23-464

                              Plaintiff,                 **Affirmation in support of
                                                         motion for leave to
                                                         appeal**
       v.

The City of New York,

                              Defendants.

------------------------------------------------------- X

### Table of Contents

| **Section** | **Page** |
|---|---|
| 1.    Preliminary Remarks | 2 |
| 2.    Relief Sought | 4 |
| 3.    Legal Standards | 7 |
| 4.    Statements of Fact | 17 |
| 5.    Conclusion | 21 |
| 6.    Certificate of Compliance with Rule 27(d)(2) | |

## Preliminary Remarks

1.    I, Towaki Komatsu, declare, pursuant to 28 U.S.C. §1746, under penalty of perjury that the information that is presented throughout this affirmation and incorporated within it is true and accurate. The acronyms shown in the next table's first column refer to ongoing and past litigation involving me to which I refer in this affirmation that is listed to the right in that table.

| # | Acronym | Litigation |
|---|---------|-----------|
| 1 | K1 | *People v. Komatsu*, No. 2017BX048917 (Bronx Crim. Ct. Jan. 23, 2020) |
| 2 | K2 | *Komatsu v. City of New York*, No. 20-10942 (VEC)(RWL)(S.D.N.Y. Jun. 17, 2022) |
| 3 | K3 | *Komatsu v. City of New York*, No. 22-1337 (2d Cir. Jul. 19, 2022) |
| 4 | K4 | *Komatsu v. City of New York*, No. 23-464 (2d Cir. Aug. 2, 2023) |
| 5 | K5 | *USA v. Komatsu*, No. 18-cr-651(ST)(E.D.N.Y. Oct. 21, 2019) |
| 6 | K6 | *Komatsu v. City of New York*, 21-511 (2d Cir. Nov. 3, 2021) |
| 7 | K7 | *Komatsu v. City of New York*, No. 18-cv-3698 (LGS)(GWG)(S.D.N.Y. Sep. 27, 2021) |
| 8 | K8 | *Komatsu v. USA*, No. 21-cv-1838 (RJD)(RLM)(S.D.N.Y. Jan. 19, 2023) |

2.    The next table's first column lists acronyms that I use in this affirmation to refer to things that are listed and otherwise described in its second column.

| Acronym | Refers To |
|---------|-----------|
| BCC | Bronx Criminal Court |
| Bronx DA | The Bronx District Attorney's Office |
| CCRB | The New York City Civilian Complaint Review Board |
| The CCRB's 1/5/18 tape | The audio recording that the CCRB recorded on 1/5/18 of the interview that its personnel conducted then of me about interactions that I had on 12/26/17 with NYPD personnel that partly consisted of |

|  | NYPD Officers Saquoi Harris ("Mr. Harris") and Steven Perez ("Mr. Perez") that resulted in K1 having been commenced against me as a malicious prosecution. I received that audio recording as discovery material in K1 and a copy of it is available at https://drive.google.com/file/d/18x1OoSFEthReoyjzLAX3kd7c05y hQ0Uf/view?usp=sharing. |
|---|---|
| The CCRB's 2/2/18 tape | The audio recording that the CCRB recorded on 2/2/18 of the interview that its personnel conducted then of Mr. Harris about interactions that he and other personnel had with me on 12/26/17 that resulted in K1 having been commenced against me as a malicious prosecution. I received that audio recording as discovery material in K1 prior to 5/2/19 and a copy of it is available at https://drive.google.com/open?id=1U98Zz-vvx-2yb79WMLYJYSOxN3CY4lqb. |
| CSO(s) | Federal court security officer(s) |
| DPM | The Daniel Patrick Moynihan federal courthouse |
| Law Department | The New York City Law Department |
| Mr. Harris' video | The video that I received as discovery material in K1 that was recorded on 12/26/17 by the NYPD body-camera that Mr. Harris then wore and begins at 7:17 pm. A copy of that video is available at https://drive.google.com/file/d/1C1v6U8LTjrVmK3dbo7D-S0tp7p3ATcvy/view?usp=sharing. |
| SCOTUS | The U.S. Supreme Court |
| TM | The Thurgood Marshall federal courthouse |
| USAO | The U.S. Attorney's Office for the Southern District of New York |
| USCOC | The Code of Conduct for U.S. Judges |
| USMS | The U.S. Marshals Service |
| The USMS' crimes | How I defined this between pages 5 and 7 in the PDF file for my 6/2/22 filing (Dkt. 145) in K8. |

3.      The abbreviations shown in the next table's first column refer to judges to

whom I refer in this affirmation that are identified in that table's second column.

| Abbreviation | Judge |
|---|---|
| Judge Caproni | U.S. District Judge Valerie Caproni |
| Judge Collins | BCC Judge Tara Collins |
| Judge Lehrburger | U.S. Magistrate Judge Robert Lehrburger |

| Judge Zimmerman | BCC Judge Jeffrey Zimmerman |

4.     Text-searchable copies of the written transcripts that were prepared from the

12/13/19 and 1/14/20 court hearings that were conducted by Judge Zimmerman

and Judge Collins in K1 are available as PDF files on the Internet at the locations

listed in the following table:

| # | Court Hearing (Judge) | Link |
|---|---|---|
| 1 | 12/13/19 (Zimmerman) | https://drive.google.com/file/d/14cGsbpk1TKXKwLV3nyFZ1uXIheAHQFoo/view?usp=sharing |
| 2 | 1/14/20 (Collins) | https://drive.google.com/file/d/1H3vjNp7L5TbRvzE8PLQNrwW-QrnuaDg9/view?usp=sharing |

**<u>Relief Sought</u>**

I urge this Court to immediately issue an order that grants me immediate relief by:

1.     Granting me leave to appeal and a change of venue for this appeal to a

different U.S. Court of Appeals to have that legal forum **a)** promptly recall the

mandate for this appeal and reinstate it and **b)** accord me the appearance and

actuality of justice and fairness that this Court prejudicially hasn't done.

2.     Authorizing me to submit an oversized motion of up to 40 pages in support

of my request for the mandate for this appeal to be recalled, this appeal to be

reinstated, and for me to be granted additional relief.

3.     Granting me oral arguments for this motion and 30 minutes to present such

arguments then while authorizing me to present relevant audio and video evidence.

4.     Granting me severe and immediate sanctions against the City of New York

that will consist of both monetary sanctions and injunctive relief in response to

illegal withholding and spoliation of video evidence that corresponds to a video

that was legally required to have been provided to me in K1 as discovery material

and recorded on 12/26/17 by the NYPD body-camera that Mr. Harris then wore

between **a)** when Mr. Harris and Mr. Perez illegally subjected me to a stop in a

public corridor in which Mr. Harris illegally kicked me and grabbed on my arms

and **b)** 7:17 pm.

5.    Causing me to be immediately benefit from this Court's decision in _Braxton_

_v. Bruen_, No. 21-2795 (2d Cir. Nov. 13, 2023) partly by having this Court **a)**

assign me a talented attorney to represent me on a pro-bono basis in K4 and K2, **b)**

order discovery to be reopened in K2; and **c)** cause me to provided a free Pacer

account.

6.    Ordering the City of New York to immediately cause me to be provided the

audit-trail records that correspond to all videos that were recorded on 12/26/17 by

NYPD body-cameras and other devices that NYPD personnel used then to record

videos of interactions that I had with NYPD personnel after 6:30 pm to determine

the degree to which an illegal cover-up may have occurred and resulted in the

illegal deletion of video footage that may have been recorded on 12/26/17 prior to

7:17 pm by the NYPD body-camera that Mr. Harris wore during interactions that

he had with me.

7.      Declaring the following:

a.      Judge Caproni, Judge Lehrburger, and this Court committed plain and unduly prejudicial error against me as well as fraud on the court in K2, K3, K4, and K6 as evinced by the following facts:

i.      Judge Caproni, Judge Lehrburger, and this Court prejudicially didn't consider **a)** the information that appears in the written transcripts that were prepared from the 12/13/19 and 1/14/20 court hearings in K1, **b)** what is heard in the CCRB's 1/5/18 and 2/2/18 tapes, and **c)** what is shown and otherwise heard in videos that were recorded on 12/26/17 mostly by NYPD body-cameras with respect to recordings from them that I received as discovery material in K1 and discussed partly in my 5/15/22 filing in K2 before Judge Caproni ignored that information.

ii.      Judge Caproni and Judge Lehrburger baselessly, biasedly, and prejudicially issued orders in K2 that required me to let attorneys for the Law Department in K2 to gain access to my medical records before **a)** those judges subjected me to First Amendment retaliation in K2 by causing K2 to be dismissed in response to my refusal to let my privacy rights about my medical records to be violated in K2 and **b)** this Court biasedly and prejudicially rubber-stamped that dismissal and scapegoated me in K3 and K4.

iii.      This Court lied in its 8/2/23 order in K4 by claiming that my

efforts to pursue an appeal to it in K4 was vexatious as it scapegoated me.

iv.     This Court's 7/17/21 order in K6 confirms that the filing restrictions that this Court imposed against me on 11/3/21 in K6 have always been an illegal, overly broad, and unwarranted prior restraint against my First Amendment rights because they aren't narrowly-tailored to fit the specific things that I did while attempting to pursue matters to this Court that **a)** proximately caused this Court to impose those restrictions and **b)** consisted of interlocutory appeals about matters that weren't final judgments, denials of requests for injunctive relief, nor matters about which the collateral order doctrine applied.

v.      This Court, Judge Caproni, and Judge Lehrburger illegally shirked their duty to neutrally, diligently, and continuously exercise proper control of court that includes diligently policing the behavior of USMS personnel and CSOs to hold that in proper check.

8.      Granting me such other, different, and further relief as is just and proper.

## **Legal Standards**

1.      _Sargent v. Columbia Forest Products, Inc._, 75 F.3d 86 (2d Cir. 1996) points out that a "supervening change in governing law that calls into serious question the correctness of the court's judgment" "may justify recall" of a mandate. That is also true about fraud on the court partly by the court and/or legal adversaries. _Montana v. United States_, 440 U.S. 147, 990 S. Ct. 970, 59 L. Ed. 2d 210 (1979) states that

redetermination "of issues is warranted if there is reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation". *Aghaeepour v. Northern Leasing Systems, Inc.*, 378 F. Supp. 3d 254 (S.D.N.Y. 2019) similarly states that "the crux of res judicata is that the party to be precluded from relitigating the issue must have had a full and fair opportunity to contest the prior determination." Noncompliance with what I just discussed violates both **a)** *Alabama Association of Realtors v. Dept of HHS*, 141 S. Ct. 2485, 594 U.S., 210 L. Ed. 2d 856 (2021) that states that "our system does not permit agencies to act unlawfully even in pursuit of desirable ends" and **b)** *Franco v. Kelly*, 854 F.2d 584 (2d Cir. 1988) that confirms that my right to petition for redress can't be obstructed "regardless of the procedural means applied".

2.     This Court biasedly and prejudicially defied its remarks in *New York Progress and Protection PAC v. Walsh*, No. 13-3889 (2d Cir. Oct. 24, 2013) in which it stated that **a)** "securing First Amendment rights is in the public interest" and **b)** the "Government does not have an interest in the enforcement of an unconstitutional law" partly by fraudulently not letting me submit appellant briefs in K3 and K4.

3.     *Bridges v. California*, 314 U.S. 252, 62 S. Ct. 190, 86 L. Ed. 192 (1941) and *Barboza v. Agata*, No. 16-258-cv (2d Cir. Jan. 18, 2017) confirm that people may bluntly criticize judges and use profanity for that without being retaliated against

for that because that is protected First Amendment expression.

4.      The fact that the decision in *Tirado v. Shutt*, No. 13-cv-2848
(LTS)(AJP)(S.D.N.Y. Nov. 9, 2015) confirms that mug shots were excluded from
that case for the reasons stated in the following excerpt from it confirms that it has
always been and remains illegal for USMS personnel and CSOs to publicly display
images partly of litigants on tablet computer screens inside of federal courthouses
outside of courtrooms to people that include potential jurors and witnesses partly
due to the risk of prejudicing such people against such litigants:

> "the photographs are clearly mug shots taken by law enforcement
> authorities at different times and thus could lead jurors to draw adverse
> inferences concerning Plaintiff's character and criminal history."

5.      *Sheppard v. Maxwell*, 384 U.S. 333, 86 S. Ct. 1507, 16 L. Ed. 2d 600 (1966)
and Canon 3(A)(3) of the USCOC confirms that all federal judges are required to
properly police the behavior of courthouse personnel that include USMS personnel
and CSOs. Also, 18 U.S.C. §1512(c)(2) confirms that judges, USMS personnel,
and CSOs are among others who shall be fined or imprisoned if they corruptly
obstruct, influence, or impede any official proceeding or attempt to do so. This
includes doing so partly by:

a.      Obstructing my right fair trials partly by enraging me by displaying
images of my face and my name on tablet computer screens to the general public
inside of courthouses before and while I have decisions to make about potential

jurors to strike during jury selection in litigation in which I'm a party in the event that they have seen such information about me on such tablet computer screens inside of courthouses.

      b.    Being judges while illegally and prejudicially refusing to perform their legal duty to exercise proper control of court directly and otherwise partly by diligently policing the behavior of USMS personnel and CSOs to hold that in proper check and not allow it to adversely affect litigants nor detract from their right to serenity and calm inside of courthouses while they lawfully conduct themselves.

6.    On 12/15/23, CSO Vincent Chirico stood near me inside of TM in a public hallway that is located in the lower level while we stood near a security screening area that is located near the cafeteria in which I have previously seen Judge Caproni. Back then, a Black male CSO told Mr. Chirico and I that what was shown on a tablet computer screen located in that screening area that was showing an image of my face and my name on it wasn't for public viewing. He claimed that one of his employers (the USMS is among them) had established a rule about that. That constitutes a supervening and major change in regards to how CSOs operate in spite of the fact that they haven't changed the angles at which other tablet computer screens are positioned in TM and DPM that illegally and publicly show information about me on them. Mr. Chirico informed me then that he had also

previously heard something about such a rule. This retrospectively confirms that though CSOs and the USMS never had any valid reason to publicly display images of my face and my name as well as those of others on tablet computer screens inside of courthouses in areas located outside of courtrooms, they have illegally and prejudicially done so while this Court and other federal judges have heinously enabled and condoned that while being their accomplices by doing so. This also confirms that the Second Circuit lied in its 8/2/23 joint decision in K4 and _Komatsu v. USA_, No. 23-95 (2d Cir. Aug. 2, 2023) as it scapegoated me by describing my attempt to pursue those appeals as being "vexatious". One of the main types of relief that I sought in those appeals was injunctive relief that would have this Court order the USMS to immediately stop displaying images of my face and my name inside of courthouses.

7.      On 1/30/24, the New York City Council overruled a veto by New York City Mayor Eric Adams about a bill that was known as the "How Many Stops Act" to have it enacted as law. That law requires NYPD personnel who wear NYPD body-cameras to record videos with them while interacting with the public for a greater number of situations than what such personnel were required to do on 12/26/17. This also satisfies the public interest requirement that exists in the 12/5/23 decision in _Acheson Hotels, LLC v. Laufer_, No. 22-429 (U.S. Dec. 5, 2023)[1] That decision

---

[1] I have omitted internal quotation marks from the summary of the findings from this decision.

points out that **a)** courts must take account of the public interest when making a

vacatur determination"; **b)** the party seeking relief from the status quo of the

appellate judgment bears the burden of establishing equitable entitlement to that

extraordinary remedy; and **c)** the possibility of nullifying a lower court's judgment

by ordering vacatur exists to "serves a specific, equitable function: to address any

unjust circumstances or unfairness that might stem from the inability to appeal a

particular lower court decision".

8.  *Southern New England Telephone Co. v. Global NAPs Inc.*, 624 F.3d 123

(2d Cir. 2010) points out that "the reason for noncompliance" is among things for

judges to consider prior to sanctioning a party for violating a directive that was

issued by a judge.

9.  *In re Kaiser,* 722 F.2d 1574 (2d Cir. 1983) states that "the cumulative effect

of all the falsehoods together evidences a pattern of reckless and cavalier disregard

for the truth serious enough to supply the necessary fraudulent intent required".

*Scott v. Harris*, 550 U.S. 372, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) similarly

states the following:

> "Respondent's version of events is so utterly discredited by the record
> that no reasonable jury could have believed him. The Court of Appeals
> should not have relied on such visible fiction; it should have viewed the
> facts in the light depicted by the videotape."

10.  *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 129 S. Ct. 1800, 173 L.

Ed. 2d 738 (2009) confirms that government agencies and their personnel are

required to act consistently and follow the rules of such agencies. Also, _Glus v. Brooklyn Eastern Dist. Terminal_, 359 U.S. 231, 79 S. Ct. 760, 3 L. Ed. 2d 770 (1959) states that "no man may take advantage of his own wrong".

11.    The 1/31/24 decision in _Rupp v. City of Buffalo_, No. 21-1036 (2d Cir. Jan 31, 2024) points out that **a)** the doctrine of qualified immunity doesn't shield performance that was in violation of clearly established law or was plainly incompetent and **b)** "the test is "whether the agents acted reasonably under settled law in the circumstances"".

12.    This Court's decision in _Piesco v. City of New York, Dept. of Personnel_, 933 F.2d 1149 (2d Cir. 1991) contains the following relevant findings:

   a.    "A statement that is made about the competency of a police officer "clearly is a matter of public concern" because "the police officer represents the most basic unit of government, one which arguably most affects the day-to-day lives of the citizenry"."

   b.    "Summary "judgment is inappropriate when `questions of motive predominate in the inquiry about how big a role" "protected behavior played in" causing an adverse action to occur."

   c.    "Without a searching inquiry into these motives, those intent on punishing the exercise of constitutional rights could easily mask their behavior behind a complex web of post hoc rationalizations."

13.    The fact that the 6/1/23 decision in _People v. Torres_, 2023 N.Y. Slip Op 50532 (Crim. Ct. 2023) states that "such audit logs "plainly" fall within the ambit of automatic discovery" confirms that I was legally-entitled in K1 to have been provided all audit-trail records by the Bronx DA that corresponded to NYPD body-

cameras that were worn on 12/26/17 by NYPD personnel who interacted with me

then and were otherwise nearby while other NYPD personnel interacted with me.

However, Judge Zimmerman and Judge Collins biasedly refused to grant

subpoenas on my behalf in K1 to have that occur.

14.     _A3 Invs. SA v. Linnett_, 2023 N.Y. Slip Op 33540 (Sup. Ct. 2023) confirms

that a court has "broad discretion to provide proportionate relief to" a "party

deprived of" "lost evidence, such as precluding proof favorable to the spoliator to

restore balance to the litigation ... or employing an adverse inference instruction at

the trial of the action." Also, the decision that was issued in _Voom HD Holdings_

_LLC v. EchoStar Satellite LLC_, 2010 N.Y. Slip -Op 33764 (Sup. Ct. 2010) **a)**

granted a request by the plaintiff to preclude consideration of evidence that the

defendant submitted in response to the defendant having engaged in spoliation of

e-mail evidence in that case and **b)** stated the following about the duty to preserve

evidence and sanctions for spoliation of evidence:

   a.     "when a party negligently loses or intentionally destroys key
          evidence, thereby depriving the non-responsible party from being able
          to prove its claim or defense, the responsible party may be sanctioned
          by the striking of its pleading."

   b.     "spoliation sanctions are appropriate where a litigant, intentionally or
          negligently, disposes of crucial items of evidence ... We have found
          dismissal to be a viable remedy for loss of a `key piece of evidence'
          that thereby precludes inspection"

   c.     "A showing of gross negligence is "plainly enough to justify sanctions
          at least as serious as an adverse inference.""

d.  "when a party establishes gross negligence in the destruction of evidence, that fact alone suffices to support a finding that the evidence was unfavorable to the grossly negligent party"

15.  The following are relevant findings from _Raub v. Campbell_, Civil Action No. 3: 13CV328-HEH (E.D. Va. Jan. 14, 2014) that closely mirror what the facts and circumstances actually were on 12/26/17 in regards to NYPD personnel having illegally and pretextually assaulted, seized, and arrested me as an act of First Amendment retaliation **before** Judge Caproni and Judge Lehrburger added insult to injury by baselessly, biasedly, and prejudicially requiring me let attorneys for the Law Department to access my medical records:

a.  "This case involves the alleged unlawful seizure and detention of Raub "upon the pretext that he was mentally unstable," which Raub contends was "the result of animus against him because of his speech critical of the government.""

b.  "Raub did not bring an action that put his mental health at issue and the evaluation was certainly not consensual, implied or otherwise"

c.  "Instead, Campbell evaluated Raub as a result of the officers' decision to detain Raub for an emergency mental health evaluation."

16.  The 10/12/23 decision in _Lyon v. Paramount Global_, No. 22-cv-9229 (JGLC) (S.D.N.Y. Oct. 12, 2023) states the the following that confirms that I wasn't required to grant access to my medical records in K2 after I told Judge Lehrburger on 12/14/21 that I was seeking garden-variety emotional distress damages in K2:

"Plaintiff has disavowed her non-garden variety emotional distress damages. In so doing, Plaintiff "need not provide medical corroboration

for any alleged injury, nor can [she] be said to have put [her] entire physical and mental [health] at issue."

17.     Before Judge Caproni illegally required me to let attorneys for the Law Department to gain full access to my medical records for a 10-year period without any restrictions about the types of medical issues (i.e. treatment for the flu and Covid-19) that covered that caused me to refuse to comply with that directive partly because that discovery request was overly broad, U.S. District Judge Andrew Carter made the following remarks in his 7/25/16 decision in *Misas v. N.-Shore Long Island Jewish Health Sys.*, No. 14-cv-8787 (ALC) (S.D.N.Y. July 25, 2016) that confirms that Judge Caproni abused her discretion in K2 partly by requiring me to grant an overly broad release to attorneys for the Law Department for access to my medical records:

> "if defendants are in fact now seeking records of all medical care rendered to the plaintiffs starting ten years before their arrests and irrespective of what maladies the plaintiffs were being treated for, the request is self-evidently overbroad."

18.     Information shown on pages 12 and 45 in a PDF file that is available at https://www.nyc.gov/assets/nypd/downloads/pdf/public_information/body-worn-camera-policy-response.pdf confirms what is shown in the following table about what the NYPD has required its personnel since 2017 to immediately and continuously do with NYPD body-cameras while wearing them on their uniforms:

| # | Page | Requirement |
|---|------|-------------|
| 1 | 12 | Information here confirms that such NYPD personnel have been |

|   |    | required since April of 2017 to immediately and continuously record a video with them whenever they subject pedestrians to stops. |
|---|----|------------------------------------------------------------------------------------|
| 2 | 45 | Information here confirms that such NYPD personnel have been required since 3/22/17 to immediately and continuously record a video with them partly in instances in which they **a)** have interactions with the public "that escalate and become adversarial" and/or  **b)** are involved in use of force incidents against people. |

### **Statements of Fact**

1.      Mr. Harris and Mr. Perez illegally subjected me to a stop, assault, and

seizure on 12/26/17 in a public corridor that is a traditional public forum and

bisects 2 sections of Fairmount Place in the Bronx. Behavior that Mr. Harris

engaged in while we were in that corridor included criminally kicking one of my

legs to try to trip me, grabbing on my arms, sharply twisting his body to block me

from having a clear line of sight to his NYPD shield to obstruct my efforts from

using that information to report a valid complaint against him and sue him, and

telling me that what is now New York City's Right to Know law was then

proposed legislation.

2.      As I stated on page 110 in my 5/15/22 filing in K2, the CCRB's 2/2/18 tape

confirms that Mr. Harris is heard in it at the elapsed time of 8 minutes and 19

seconds as he confirmed that he and Mr. Perez subjected me to a stop on 12/26/17

while I was walking in that corridor:

> "Sir, if you will allow me to explain to you why I am stopping
> you…you're walking through the schoolyard…the courtyard"

3.     Mr. Harris is heard in the CCRB's 2/2/18 tape at the elapsed time of 8 minutes and 42 seconds as he stated that he subjected me to a stop in the public corridor where I first met him and Mr. Perez on 12/26/17 in an area in it that is located near the end of it that is located near the intersection of Clinton Avenue and Fairmount Avenue in the Bronx. He is also heard in that tape at the elapsed time of 7 minutes and 50 seconds as he stated that I was "casually walking through" that corridor when he and Mr. Perez encountered me there. This confirms that he didn't have reasonable suspicion nor probable cause to subject me to a stop there. Mr. Harris is also heard in that tape at the elapsed time of 2 minutes and 38 seconds as he stated that he used the NYPD body-camera that he wore on 12/26/17 to record the entirety of the encounter that he had with me then as he was then referring to the entirety of the interactions that he and other NYPD personnel had with me on 12/26/17 from **a)** the moment that he and Mr. Perez subjected me to a stop in that corridor **b)** thru to the period during which I was inside of the NYPD's 48th precinct on 12/26/17 after Mr. Harris and other NYPD personnel illegally and pretextually arrested me.

4.     As I stated on page 110 in my 5/15/22 filing in K2, the CCRB's 2/2/18 tape confirms that Mr. Harris is heard in it at the elapsed time of 8 minutes and 24 seconds as he stated that I told him on 12/26/17 that he and Mr. Perez were corrupt and to leave me alone right after they subjected me to a stop in the corridor where I

first met them. This confirms that the nature of my interactions with Mr. Harris and Mr. Perez immediately became adversarial in response to the fact that they subjected me to an illegal stop in that corridor. These facts confirm that he was legally required to immediately and continuously record a video with his NYPD body-camera from the moment that he and Mr. Perez subjected me to a stop in that corridor.

5.      What appears between lines 6 and 11 on page 35 in the written transcript that was prepared from the 12/13/19 court hearing in K1 confirms that while she then worked for the Bronx DA as an assistant district attorney, Neelam Chhikara made the following remarks to Judge Zimmerman during that hearing about Mr. Harris while her remarks and the preceding information confirms that Mr. Harris had lied to her partly by claiming that he didn't subject me to a stop in the corridor where I first met him and Mr. Perez on 12/26/17:

> "the People did speak to Officer Harrison concerning these issues and the first thing is that he was not obligated to turn on his camera at the stop because it was not -- it's not considered a stop. It was more of a passing by between the officers and the defendant when it initially started"

6.      What appears between lines 13 and 15 on page 35 in the written transcript that was prepared from the 12/13/19 court hearing in K1 confirms that Ms. Chhikara stated the following to Judge Zimmerman during that hearing as she expressed that Mr. Harris had claimed to her that he didn't begin to use the NYPD body-camera that he wore on 12/26/17 to record a video of interactions that he and

Mr. Perez had with me then until 5 to 10 minutes after such interactions began:

> "I spoke to Officer Harris, the whole encounter prior to his body camera being turned on is approximately five to ten minutes in his approximations."

7. Contrary to Mr. Harris' claims, he lied to Ms. Chhikara by virtue of the fact that I interacted with him and Mr. Perez for roughly 20 to 30 minutes before 7:17 pm while they illegally subjected me to a stop, assault, and seizure in the corridor where I first met them. This explains why it has been crucial for me to have been provided the audit-trail records for that camera from 12/26/17 partly to independently determine whether he actually recorded a longer video then of that before that video was illegally edited possibly by having video footage from it deleted that incriminated Mr. Harris and/or Mr. Perez during their interactions with me in the corridor where I met them.

8. Discovery material that I received in K1 included an audio recording of an unknown member of the NYPD that was recorded on 12/26/17 and is available at https://drive.google.com/file/d/10hdOt5VqM-RsiOeZhS3ohomEYzFXirzx. He is heard in it at the elapsed time of 8 minutes and 51 seconds as he stated that the time then was 7:26 pm on 12/26/17. He made that remark shortly after someone he talked with earlier in that audio recording made a remark at the elapsed time of 8 minutes and 37 seconds as he stated "he's not EDP" while referring to me and expressing that I wasn't an emotionally-disturbed person then. Also, in both Judge

Caproni's 6/17/22 dismissal order in K2 and Judge Lehrburger's 4/21/22 report in K2 in which he urged Judge Caproni to dismiss K2, they fraudulently omitted the fact that the following remarks by Judge Lehrburger to me on 12/14/21 and other text that appears between line 25 on page 38 and line 20 on page 40 in the written transcript that was prepared from the 12/14/21 conference that I had in K2 with Judge Lehrburger confirms that he clearly suggested on 12/14/21 that I wouldn't need to grant access to my medical records to opposing counsel in K2 after I told him then that damages that I was seeking in K2 were for what he described as garden variety emotional distress that stemmed from the illegal arrest, assault, and seizure against me partly by Mr. Harris and Mr. Perez on 12/26/17:

> "That would be garden variety, you wouldn't need probably to have medical records."

## Conclusion

This Court needs to grant this motion in its entirety and grant me such further relief as a neutral U.S. Court of Appeals may deem just, equitable, and proper. The fact that an image of my face and my name was again publicly, prominently, and illegally shown on tablet computer screens inside of TM and DPM on 1/23/24 partly in a security screening area confirms that this Court owes me a change of venue and reversals of the dismissals of K2, K7, and K8.

Dated:      February 5, 2024

_____

Towaki Komatsu

*Plaintiff, Pro Se*

55 West 110th St.
New York, NY 10026
Tel: 305-784-7450
E-mail: Towaki_Komatsu@yahoo.com

## **CERTIFICATE OF COMPLIANCE WITH RULE 27(d)(2)**

I, Towaki Komatsu, certify that this motion contains 5,199 words and is 20 pages in length (excluding, as permitted by Fed. R. App. P. 32(f), the table of authorities, appended exhibits, and certificate of compliance), as counted by the Microsoft Word computer software used to prepare this motion.

I further certify pursuant to Fed. R. App. P. 27(d)(2) that the attached motion is proportionally spaced and has a typeface (Times New Roman) of 14 points.

Dated:        February 5, 2024

Towaki Komatsu

*Plaintiff, Pro Se*

55 West 110th St.
New York, NY 10026
Tel: 305-784-7450
E-mail: Towaki_Komatsu@yahoo.com