UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

Thurgood Marshall U.S. Courthouse   40 Foley Square, New York, NY 10007 Telephone: 212-857-8500

MOTION INFORMATION STATEMENT

Docket Number(s): 23-464 _____    _____ Caption [use short title] _____

Motion for: retroactive authorization to file a motion to a) recall the mandate

and reinstate this appeal and b) grant me additional relief.

Set forth below precise, complete statement of relief sought:

I seek an order that will retroactively grant me authorization to

file a motion to a) recall the mandate and reinstate this appeal and b)    **Komatsu v. City of New York**

grant me additional relief.

MOVING PARTY: Towaki Komatsu _____    OPPOSING PARTY: See attached _____

☑ Plaintiff    ☐ Defendant

☐ Appellant/Petitioner    ☐ Appellee/Respondent

MOVING ATTORNEY: Towaki Komatsu _____    OPPOSING ATTORNEY: Jamison Davies _____

[name of attorney, with firm, address, phone number and e-mail]

Towaki Komatsu    Jamison Davies

55 West 110th St., New York, NY 10026    New York City Law Department, 100 Church St., NY, NY

Tel: 305-784-7450/ E-mail: Towaki_Komatsu@yahoo.com    10007/ Tel: 212-356-2490/ e-mail: jdavies@law.nyc.gov

Court- Judge/ Agency appealed from: U.S. District Judge Valerie Caproni

**Please check appropriate boxes:**

Has movant notified opposing counsel (required by Local Rule 27.1):
☑ Yes    ☐ No (explain): _____
_____

Opposing counsel's position on motion:
☐ Unopposed    ☐ Opposed    ☑ Don't Know
Does opposing counsel intend to file a response:
☐ Yes    ☐ No    ☑ Don't Know

Is oral argument on motion requested?    ☑ Yes    ☐ No (requests for oral argument will not necessarily be granted)

Has argument date of appeal been set?    ☐ Yes    ☑ No  If yes, enter date: _____

**FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUCTIONS PENDING APPEAL:**

Has this request for relief been made below?    ☐ Yes  ☑ No
Has this relief been previously sought in this court?    ☑ Yes  ☐ No
Requested return date and explanation of emergency: _____
As soon as possible. This Court and other judges issued decisions after this
Court's 8/2/23 decision in this appeal that repudiate this Court's 8/2/23 decision. Also, this Court
and the district court unlawfully didn't consider relevant evidence that confirms that the dismissal
of the district court action was baseless, biased, and prejudicial.

Signature of Moving Attorney:

Towaki Komatsu _____ Date: 2/7/24 ___    Service by: ☐ CM/ECF  ☑ Other [Attach proof of service]

A.  **Second Circuit Docket number:** 23-464

B.  **Opposing Parties:**

| | | | |
|---|---|---|---|
| 1. | The City of New York | 8. | NYPD Officer Avdo Javorovac |
| 2. | NYPD Sergeant Frank Amill | 9. | NYPD Officer Brian Leo |
| 3. | NYPD Officer John Avellino | 10. | NYPD Officer Liang Lin |
| 4. | NYPD Officer Andrew Cummings | 11. | NYPD Officer Steven Perez |
| 5. | NYPD Officer Ruben Farrell | 12. | NYPD Officer Claudia Rodriguez |
| 6. | NYPD Officer Saquoi Harris | 13. | NYPD Captain Joseph Tompkins |
| 7. | NYPD Officer Robert Holmes | | |

C.  **Opposing Attorney's Contact Information:**

- **Name**: New York City Corporation Counsel Sylvia Hinds-Radix (her office appears to have designated Jamison Davies who works for it to represent the defendants listed above)

   **Mailing address:**

   New York City Law Department
   100 Church Street
   New York, New York 10007

   Tel: (212) 356-1000
   E-mail: ServiceECF@law.nyc.gov

   Jamison Davies
   Tel: (212) 356-2490
   E-mail: davies@law.nyc.gov

UNITED STATES COURT OF APPEALS FOR
THE SECOND CIRCUIT
------------------------------------------------------- X

Towaki Komatsu,                                          Docket Number: 23-464

                              Plaintiff,          **Affirmation in support of
emergency motion for
permission to file motion
to recall mandate**

    v.

The City of New York,

                              Defendants.

------------------------------------------------------- X

## Table of Contents

| **Section** | **Page** |
|---|---|
| 1. Preliminary Remarks | 2 |
| 2. Relief Sought | 3 |
| 3. Reasons to Grant the Relief Sought | 4 |
| 4. Certificate of Compliance with Rule 27(d)(2) | |

## Preliminary Remarks

1.      I, Towaki Komatsu, declare, pursuant to 28 U.S.C. §1746, under penalty of perjury that the information that is presented throughout this affirmation and incorporated within it is true and accurate. The acronyms shown in the next table's first column refer to ongoing and past litigation involving me to which I refer in this affirmation that is listed to the right in that table.

| # | Acronym | Litigation |
|---|---------|------------|
| 1 | K1 | *People v. Komatsu*, No. 2017BX048917 (Bronx Crim. Ct. Jan. 23, 2020) |
| 2 | K2 | *Komatsu v. City of New York*, No. 20-10942 (VEC)(RWL)(S.D.N.Y. Jun. 17, 2022) |
| 3 | K3 | *Komatsu v. City of New York*, No. 23-464 (2d Cir. Aug. 2, 2023) |
| 4 | K4 | *Komatsu v. City of New York*, 21-511 (2d Cir. Nov. 3, 2021) |
| 5 | K5 | *Komatsu v. City of New York*, No. 18-cv-3698 (LGS)(GWG)(S.D.N.Y. Sep. 27, 2021) |

2.      The next table's first column lists acronyms that I use in this affirmation to refer to things that are listed and otherwise described in its second column.

| Acronym | Refers To |
|---------|-----------|
| BCC | Bronx Criminal Court |
| CCRB | The New York City Civilian Complaint Review Board |
| The CCRB's 2/2/18 tape | The audio recording that the CCRB recorded on 2/2/18 of the interview that its personnel conducted then of NYPD Officer Saquoi Harris ("Mr. Harris") about interactions that he and other personnel had with me on 12/26/17 that resulted in K1 having been commenced against me as a malicious prosecution. I received that audio recording as discovery material in K1 prior to 5/2/19 and a copy of it is available at https://drive.google.com/open?id=1U98Zz-vvx-2yb79WMLYJYSOxN3CY4lqb. |
| CSO(s) | Federal court security officer(s) |

| DPM | The Daniel Patrick Moynihan federal courthouse |
| Law Department | The New York City Law Department |
| SCOTUS | The U.S. Supreme Court |
| TM | The Thurgood Marshall federal courthouse |
| USCOC | The Code of Conduct for U.S. Judges |
| USMS | The U.S. Marshals Service |

3.      The abbreviations shown in the next table's first column refer to judges to whom I refer in this affirmation that are identified in that table's second column.

| Abbreviation | Judge |
| --- | --- |
| Judge Caproni | U.S. District Judge Valerie Caproni |
| Judge Collins | BCC Judge Tara Collins |
| Judge Lehrburger | U.S. Magistrate Judge Robert Lehrburger |
| Judge McMahon[1] | U.S. District Judge Colleen McMahon |
| Judge Rakoff | U.S. District Judge Jed Rakoff |
| Judge Schofield | U.S. District Judge Lorna Schofield |
| Judge Zimmerman | BCC Judge Jeffrey Zimmerman |

4.      Text-searchable copies of the written transcripts that were prepared from the 12/13/19 and 1/14/20 court hearings that were conducted by Judge Zimmerman and Judge Collins in K1 are available as PDF files on the Internet at the locations listed in the following table:

| # | Court Hearing (Judge) | Link |
| --- | --- | --- |
| 1 | 12/13/19 (Zimmerman) | https://drive.google.com/file/d/14cGsbpk1TKXKwLV3nyFZ1uXIheAHQFoo/view?usp=sharing |
| 2 | 1/14/20 (Collins) | https://drive.google.com/file/d/1H3vjNp7L5TbRvzE8PLQNrwW-QrnuaDg9/view?usp=sharing |

**Relief Sought**

---

[1] The reference in this affirmation that refers to her refers to a time while she then was the Chief U.S. District Judge for the Southern District of New York.

I urge this Court to immediately issue an order that grants me immediate relief by:

1.      Granting me retroactive authorization to file the motion to recall the mandate and reinstate my appeal that corresponds to K3 that I filed in K3 on 2/5/24 both **a)** for the reasons that I discussed in that motion and incorporate by reference as though fully set forth herein and **b)** additional reasons that are discussed in this affirmation.

### Reasons to Grant the Relief Sought

1.      The fact that SCOTUS' decision in *Santos-Zacaria v. Garland*, No. 21-1436 (U.S. May 11, 2023) states that its "certiorari review is "not a matter of right, but of judicial discretion confirms that SCOTUS doesn't necessarily grants petitions for writs of certiorari irrespective of how meritorious they may be.

2.      Although what I will discuss next about **a)** *Alabama Association of Realtors v. Dept of HHS*, 141 S. Ct. 2485, 594 U.S., 210 L. Ed. 2d 856 (2021); **b)** *Franco v. Kelly*, 854 F.2d 584 (2d Cir. 1988); and **c)** *New York Progress and Protection PAC v. Walsh*, No. 13-3889 (2d Cir. Oct. 24, 2013), I also discussed in the motion that I filed on 2/5/24 in K3, that information is worth repeating here. The judiciary is an agency and *Alabama Association of Realtors v. Dept of HHS* states that "our system does not permit agencies to act unlawfully even in pursuit of desirable ends". *Franco v. Kelly* confirms that my right to petition for redress can't be obstructed "regardless of the procedural means applied". Also, though *New York*

_Progress and Protection PAC v. Walsh_ points out that **a)** "securing First

Amendment rights is in the public interest" and **b)** the "Government does not have

an interest in the enforcement of an unconstitutional law", this Court has opted to

violate what it previously stated partly by subjecting me to unwarranted and illegal

filing restrictions.

3.      This Court pointed out in its decision in _Board of Managers of 2900 Ocean_

_Avenue Condominium v. Bronkovic_, 83 F.3d 44 (2d Cir. 1996) that filing

restrictions that it and other judges impose "must be appropriately narrow." This

Court also pointed out in _Cornelio v. Connecticut_, 32 F.4th 160 (2d Cir. 2022) that

a "regulation is not narrowly tailored" where "a substantial portion of the burden

on speech does not serve to advance the State's content-neutral goals."

4.      _US v. Harrell_, 207 F. Supp. 2d 158 (S.D.N.Y. 2002) contains the following

findings that are about the need for sanctions and punishments to fit the crime:

        a.      "The magnitude of a wrong, however profound the hurt, does not
                relieve us of the obligation to draw distinctions where matters of
                degree are entailed and where differentiation may be called for. Two
                bedrock canons that define our jurisprudence are embodied in the
                principles that the punishment must fit the crime"

        b.      "Were we, in the name of avenging wrongs, to requite grief with
                disproportionately greater grief, and in so doing override the rules our
                justice system has prescribed precisely to restrain the harmful
                impulses and excess to which unchecked retribution could give free
                rein, we would not truly honor the public's legitimate demand for
                justice in any situation."

5.      In the same vein, **a)** _In re Brown_, 319 B.R. 876 (Bankr. N.D. Ill. 2005); **b)**

*Rojas v. X Motorsport, Inc.*, No. 16 C 2982 (N.D. Ill. Sept. 27, 2017); and **c)** *Davis v. Nevarez,* No. 3: 07-cv-00427-EJL-LMB (D. Idaho May 22, 2009) point out that judges must cause the sanctions that they impose to fit the inappropriate conduct when issuing sanctions, inherent authority sanctions must fit the misconduct and take account of context, and a sanction must fit the specific crime that triggered it.

6.      Prior to imposing patently unwarranted, illegal, discriminatory, and illegal filing restrictions against me that flagrantly violate my First Amendment rights through this Court's 11/3/21 order in K4, this Court was required to diligently determine whether lesser sanctions were available to remedy the problem of me submitting filings to this Court about matters that weren't **a)** final judgments, **b)** denials of requests for injunctive relief, and otherwise appealable because the collateral order doctrine didn't apply to them. This Court instead shirked that duty. This Court's decision in *Braxton v. Bruen*, No. 21-2795 (2d Cir. Nov. 13, 2023) represents a supervening change in how this Court operates that demands reconsideration and vacatur of this Court's 11/3/21 order in K4. This is proven by the fact that *Braxton v. Bruen* confirms that this Court caused the appellant to be appointed pro-bono counsel in a civil action. If this Court had done so with me too prior to 11/3/21, it's highly unlikely that I would have continued to submit legal filings to this Court because an attorney would have instead done so when necessary. The fact I didn't do anything wrong in regards to final judgments to

cause this Court to impose a sanction against me that that would be applicable to them is indisputable. That fact confirms that this Court's 11/3/21 order in K4 has always been plain error and an illegal and overly broad prior restraint on my First Amendment rights. Perhaps there were other suitable options at this Court's disposal to use to properly address the issue of me submitting filings to this Court before this Court had jurisdiction over those matters. However, it has never been my burden to determine what such options were. Having said that, this Court could have provided much better oversight over how subordinate judges operate and proper safeguards for that to cause me to have a need far less often to pursue appeals about their actions. However, this Court hasn't done that and instead opted to prejudicially be irrational and vexatious towards me partly by imposing its unwarranted 11/3/21 sanction against me. This fact alone is sufficient grounds due to mootness for this Court to immediately grant me retroactive authorization to file a motion to recall the mandate and reinstate my appeal partly for K3.

7.     Long before Judge Caproni and Judge Lehrburger committed fraud on the court and First Amendment retaliation against me in K2 partly by dismissing K2 in response to my having refused to comply with illegal directives by them to let attorneys for the Law Department in K2 to gain access to my medical records in spite of the fact that that information was totally irrelevant in K2 and off limits for that reason and due to my privacy rights, the following occurred that confirms that

K2's dismissal was baseless, prejudicial, and retaliatory and that my medical records were off limits in K2 partly due to estoppel and my right to turnabout that this Court confirmed in *US v. Diallo*, 40 F.3d 32 (2d Cir. 1994) is fair play in federal court litigation:

      a.     What appears between lines 6 and 11 on page 35 in the written transcript that was prepared from the 12/13/19 court hearing in K1 confirms that while she then worked for the Bronx District Attorney's Office as an assistant district attorney, Neelam Chhikara made remarks to Judge Zimmerman during that hearing about Mr. Harris that indicated that Mr. Harris had previously made remarks to her in which he confirmed that he intentionally didn't use the NYPD body-camera that he wore on on 12/26/17 during interactions that he had with me for what he claimed was the first 5 to 10 minutes of our interactions in a public corridor where I first met him and NYPD Officer Steven Perez ("Mr. Perez"). This point corresponds to the following screenshot from that page in that transcript that Judge Caproni, Judge Lehrburger, and this Court biasedly and prejudicially never considered:

```
 6          MS. CHHIKARA:  Your Honor, the People did speak
 7     to Officer Harrison concerning these issues and the first
 8     thing is that he was not obligated to turn on his camera at
 9     the stop because it was not -- it's not considered a stop.
10     It was more of a passing by between the officers and the
11     defendant when it initially started and after that the
12     defendant proceeded to follow them for more than a block.
13          I spoke to Officer Harris, the whole encounter
14     prior to his body camera being turned on is approximately
15     five to ten minutes in his approximations.
16          And additionally, when Officer Harris said the
17     "entire encounter," he meant the encounter when he
18     rendered it to be a situation where he had to detain the
19     defendant and when he was obligated to turn on the body
20     camera at that point.
```

    b.     Mr. Harris' remarks to the CCRB on 2/2/18 that are heard in the

CCRB's tape together with what the NYPD's policies were in March and April of

2017 confirm that contrary to what is stated in the preceding screenshot, Mr. Harris

was required to have immediately used the NYPD body-camera that he wore on

12/26/17 during his interactions with me to record a video of my interactions with

him and Mr. Perez from the moment that they subjected me to an illegal and totally

baseless stop in the public corridor where I first met them then. I discussed this in

detail in my 2/5/24 motion in K3.

    c.     Discovery material that I received in K1 that is from CCRB case

number 201802306 confirms that the CCRB determined that Mr. Harris violated

NYPD policies on 3/20/18 that was less than 4 months after I met him on 12/26/17

as he did so on 3/20/18 partly by not using a NYPD body-camera that he then wore

to record a video of people that he and another police officer subjected to a stop in

an area located near where I met him on 12/26/17. The following screenshot from

that discovery material confirms this point about how Mr. Harris is a creature of

habit who appears to engage in illegal cover-ups about his actions while he is on-

duty as a member of the NYPD:

> Because PO Harris and PO ███████ did not prepare memo book entries or Stop,
> Question, and Frisk reports as required, and because they did not properly use their body-worn
> cameras, it is recommended that they be cited for **other misconduct.**

    d.    An order was issued on 8/10/21 that was issued in _USA v. Garcia_, No.

19-cr-410 (FB)( E.D.N.Y. Aug. 10, 2021) that corresponds to docket number 67

and contains information on pages 17 to 19 about the fact that in situations in

which police officers don't record videos with body-cameras that they wear while

they're required to record them, the appropriate and equitable response by judges is

to not let them benefit by such obstruction of justice partly by both **a)** suppressing

evidence that their attorneys may seek to obtain from their legal adversaries and **b)**

drawing adverse inferences from their failure to record such videos. This point is

buttressed by this Court's remarks in the last paragraph on page 5 of its 2/7/24

order in _Moncayo v. United Parcel Service, Inc._, No. 23-161 (2d Cir. Feb. 7, 2024)

that confirms that it affirmed a district judge's decision to exclude a portion of evidence about events that occurred after an incident to not confuse a jury that needed to determine liability about matters that occurred prior to that point. This also relates both to **c)** the fruits of the poisonous tree doctrine and **d)** the fact that _Wright v. Musanti_, No. 14-cv-8976 (KBF) (S.D.N.Y. Jan. 20, 2017) points out that an initial aggressor is liable to a plaintiff for all ensuing assaults and batteries for the duration of an encounter between them after that aggressor initiated an unwarranted physical assault against the plaintiff. The fact that that decision uses the operative word of "encounter" in that finding and Mr. Harris told the CCRB on 2/2/18 that he recorded the "whole encounter" of interactions that he and other NYPD personnel had with me on 12/26/17 from the moment that Mr. Harris met me then is critically significant.

  e.  This Court issued its decision in _West v. Goodyear Tire & Rubber Co._, 167 F.3d 776 (2d Cir. 1999) in 1999 in which it issued the following findings about spoliation of evidence:

    i. "Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another'suse as evidence in pending or reasonably foreseeable litigation."

    ii. _"It has long been the rule that spoliators should not benefit from their wrongdoing"_

    iii. "Even without a discovery order, a district court may impose sanctions for spoliation, exercising its inherent power to control litigation."

      iv.     "Dismissal is appropriate if there is a showing of willfulness, bad faith, or fault on the part of the sanctioned party"

      v.     "The sanction should be designed to: (1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore "the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party."

      vi.     "the applicable sanction should be molded to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine."

   f.   Second Circuit Judge Alison Nathan issued the 2018 decision in

*Collins v. City of New York*, 295 F. Supp. 3d 350 (S.D.N.Y. 2018) in which she

stated the following about lies by police officers and the harm that causes the

victims of such lies:

      i.     "When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial"

      ii.     "Such actions are considered "corruption of the truth-seeking function of the trial process.""

      iii.     "Such fabrication violates the right to a fair jury trial whether the officer fabricates tangible evidence or "the officer's own account of his or her observations of alleged criminal activity, which he or she then conveys to a prosecutor.""

      iv.     ""[T]he claim accrues when the officer forwards the false information to the prosecutors.""

      v.     "A trial is not a prerequisite to a claim: a plaintiff need only prove that she suffered a "deprivation of liberty [that] is not `too remote a consequence' of the act of creating the false information.""

vi.  "Spending a number of hours in jail has been found to constitute a sufficient deprivation of liberty, as has the obligation to attend numerous follow-up court appearances."

g.  The 2016 decision in *Cardoza v. City of New York*, 139 A.D.3d 151, 29 N.Y.S.3d 330 (App. Div. 2016) addressed how malicious intent may be inferred by stating the following:

i.  "Since "[a]ctual malice is seldom established by direct evidence of an ulterior motive" (*Martin v City of Albany,* 42 NY2d 13, 17 [1977]), it "may be proven by circumstantial evidence" (*Nardelli*, 44 NY2d at 502), and depends "upon inferences to be reasonably drawn from the surrounding facts and circumstances""

ii.  "The actual malice element "does not require a plaintiff to prove that the defendant was motivated by spite or hatred"

iii.  "Actual malice may also be inferred from a total lack of probable cause (*id.*; *see also* 2A NY PJI3d3:50.4 at 520 [2016]) or from defendant's intentionally providing false information to law enforcement authorities"

iv.  "It is important to note that the lack of probable cause and actual malice elements are independent, and "a jury may, but is not required to, infer the existence of actual malice from the fact that there was no probable cause to initiate the proceeding""

8.  Further grounds for this Court to grant this motion include the following material facts:

a.  The material fact that I prevailed in the malicious prosecution that corresponds to K1 confirms that I'm entitled to immediate damages partly for First

Amendment retaliation[2] and garden variety emotional distress claims, having to make court appearances in K1, and property of mine that the NYPD damaged and otherwise caused me to lose on 12/26/17 while illegally assaulting, seizing, and falsely arresting me.

b.      Major questions exist about the competency of the CCRB personnel who investigated my complaints against the NYPD about 12/26/17 partly because the only NYPD member who the CCRB interviewed about that Mr. Harris instead of having also interviewed Mr. Perez. Such questions also stem from the fact that Mr. Harris made remarks to the CCRB on 2/2/18 in which his remarks confirm that he both **a)** claimed that he recorded the entirety of his interactions with me on 12/26/17 on video video by using the NYPD body-camera that he then wore and **b)** implicitly confirmed that he was required by NYPD policies to have immediately and continuously recorded video with that camera of the interactions that he and other NYPD personnel had with me from the instant that he and Mr. Perez subjected me to a stop in a public corridor in an area that is located near the intersection of Fairmount Place and Clinton Avenue in the Bronx. The CCRB's 2/2/18 tape confirms that Mr. Harris biasedly and prejudicially never was asked

---

[2] While talking with Judge Lehrburger on 12/14/21 during a conference in K2, remarks that I made that appear on page 40 between lines 6 and 8 in the transcript that was prepared from it referred to the 6/27/17 decision in *Jennings v. Town of Stratford,* 263 F. Supp. 3d 391 (D. Conn. 2017) in which a jury's verdict of $685,000 for First Amendment retaliation withstood appellate review.

during the CCRB's 2/2/18 interview of him why the CCRB didn't have any video
footage from the video that he recorded on 12/26/17 of his interactions with me
that was from before 7:17 pm and recorded in the public corridor where he and Mr.
Perez subjected me to an illegal stop, seizure, and assault. The CCRB also didn't
ask him why he didn't complete a NYPD stop report about that stop.

     c.     The information on pages 9 and 10 in this Court's 1/30/24 decision in
*Park v. Kim*, No. 22-2057 (2d Cir. Jan. 30, 2024) confirms that all attorneys who
have represented legal adversaries of mine in federal court litigation in which I
have been a party have been required to certify that the representations that they
made in such lititgation to judges about matters were true and accurate to the best
of their knowledge, information, and belief in the wake of such attorneys having
made inquiries that were reasonable under the circumstances. This speaks to the
fact that attorneys for the defense in K2 prejudicially lied in K2 partly by omission
by not informing Judge Caproni and Judge Lerhburger that there never was any
grounds for attorneys for the Law Department to have requested access to my
medical records in response to the fact that Ms. Chhikara having told Judge
Zimmerman in K1 that Mr. Harris chose not to record 5 to 10 minutes of video
with his NYPD body-camera on 12/26/17 before Mr. Harris and other NYPD
personnel subjected me to an official arrest. In short, it was official misconduct by
attorneys for the Law Department in K2 to not have disclosed that to Judge

Caproni and Judge Lehrburger before they made requests for access to my medical records.

9.     *CUCS W 127TH ST., LLC v. EE*, 80 Misc. 3d 995, 193 N.Y.S.3d 909 (Civ. Ct. 2023) states the following about the legal definition of a nuisance while citing appellate decisions in support of these findings:

      a.     "Courts have defined a nuisance as a "continuous invasion of rights— a pattern of continuity or recurrence of objectionable conduct.""

      b.     "To establish whether certain behavior is so egregious as to rise to the level of nuisance, the court must weigh the quantitative and qualitative aspects under a specific set of facts to determine whether a nuisance occurred."

10.     The finding in *RC v. City of New York*, 2021 N.Y. Slip Op 32049 (Sup. Ct. 2021) that states that "once a sealed document is seen it cannot be unseen" relates to what I will discuss next. On 2/11/20, I filed a letter partly in K5 in which I informed judges that included Judge Schofield, Judge Rakoff, and Judge McMahon of the fact that USMS personnel and CSOs were illegally continuing to display an image of my face and my name on a tablet computer screen in the security screening area on the first floor in TM that was from K1 and were doing so after **a)** I prevailed in K1 by virtue of its dismissal and **b)** K1 was sealed by Judge Collins on 1/23/20.The fact that the City of New York illegally didn't safeguard that image of me warrants severe sanctions against it. The same is true about the fact that the USMS and CSOs violated Judge Collins 1/23/20 sealing

order in K1 by continuing to possess and publicly display that image after 1/23/20.

Moreover, that image certainly could have prejudiced a potential juror or witness

against me in K2 if K2 had reached the jury selection phase and such people had

visited TM and other courthouses where such information about me was publicly

displayed outside of courtrooms.

11.     Both the fact that this Court illegally imposed a filing restriction against me

about final judgments and this Court and other federal judges in New York City

are to blame for why images of my face and name are still illegally, publicly, and

conspicuously shown by CSOs and USMS personnel on tablet computer screens

inside of DPM and TM in areas located outside of courtrooms are major nuisances

to me and others partly because such displays about me run the risk of prejudicing

people against me by smearing my reputation. Those displays occur partly in

security screening areas to people who may currently or later be jurors and

witnesses in litigation in which I may currently or later be a party, employers, and

journalists. A diligent and objective review of the refusal and failure by this Court

and other federal judges to intervene on my behalf against the USMS and CSOs in

regards to the USMS crimes while jointly considered with **a)** Canon 3(A)(3) of the

USCOC, **b)** 18 U.S.C. §1512(c)(2), and **c)** findings in _Sheppard v. Maxwell_, 384

U.S. 333, 86 S. Ct. 1507, 16 L. Ed. 2d 600 (1966); _Gentile v. State Bar of Nev.,_ 501

U.S. 1030, 111 S. Ct. 2720, 115 L. Ed. 2d 888 (1991); and _Remmer v. United_

*States*, 347 U.S. 227, 230 (1954) confirm that it has been this Court and other federal judges who have been scapegoating me since 2018 partly with respect to complaints that I have reported against USMS personnel, CSOs, and the failure and refusal by federal judges to properly police their behavior to hold that in proper check. *Gentile v. State Bar of Nev.* states the following:

  a. "Even if a fair trial can ultimately be ensured through *voir dire,* change of venue, or some other device, these measures entail serious costs to the system. Extensive *voir dire* may not be able to filter out all of the effects of pretrial publicity"

  b. "Few, if any, interests under the Constitution are more fundamental than the right to a fair trial by "impartial" jurors, and an outcome affected by extrajudicial statements would violate that fundamental right.""

12. *Remmer v. United States* points out that in instances in which there may be reason to believe that there has been inappropriate external influence upon a jury, the judge in the case that concerns should determine what the circumstances were as well as the impact that may have had upon a juror and whether or not that was prejudicial while doing so during a court hearing as all interested parties would be permitted to participate in it.

13. While I conducted myself in a lawful manner in DPM and TM on 1/23/24, CSOs Anthony Imburgio and Stephen Rohrbacher provided me information then about what the current times then were that indicated that such information about me was continuing to be illegally shown every 7 minutes in TM and every 12

minutes in DPM on tablet computer screens before the faces of others who have no ties to me were also shown on them to smear my reputation by being associated with them. Such displays about me equates to more than 64 times over an 8-hour span in TM and 40 times in DPM. That is far more often, offensive, and unduly prejudicial than how often I **a)** have submitted legal filings to this Court and **b)** preempted Donald Trump with unkind remarks to courthouse personnel that include judges strictly in legal filings that I filed remotely that in contrast to him I have been penalized for and baselessly and biasedly so as a form of illegal selective-enforcement and discrimination. While I talked with Mr. Imburgio then, he asked me if I had urged the USMS and federal judges to cause images of me and my name to stop being displayed on tablet computer screens outside of courtrooms in DPM and TM. I told him that though I had done so, the response that I got from this Court, other federal judges, and the USMS has been the equivalent of "fuck you" and "fuck off" about that. While I talked with Mr. Rorhbacher on 1/23/24, we talked partly about how Donald Trump has been getting away with murder with respect to things that he has said about judges. Mr. Rohrbacher agreed with me as I told him that I wouldn't be able to get away with saying the kinds of things against judges that Mr. Trump has been saying about them.

14.     The preceding information cements the fact that I need to immediately be

granted a change of venue partly for K3 to a different U.S. Court of Appeals. That is necessary to allow for the appearance and actuality of justice to be properly accorded to me. _US v. City of New York_, 717 F.3d 72 (2d Cir. 2013) reinforces this assertion by pointing out that reassignment of cases is reserved for extraordinary cases and is warranted, even in the absence of bias, to avoid an appearance of partiality. _US v. City of New York_ elaborated about this by pointing out that **a)** a "firmness" of a judge's views warranted reassignment on remand to assure "appearance of justice" **and b)** reassignment is advisable to preserve the appearance of justice in situations that include those in which there is an absence of proof of personal bias by a judge. The firm position that this Court and other federal judges in this judicial circuit has consistently been to pretextually and despicably deny me my First Amendment rights and their compliance with prevailing legal standards in regards to me. To use the analogy of an atrocious marriage, that demands a long overdue divorce to let me embrace a new dating partner in a different judicial circuit for justice.

Dated:      February 7, 2024

                Towaki Komatsu

*Plaintiff, Pro Se*

55 West 110th St.
New York, NY 10026
Tel: 305-784-7450
E-mail: Towaki_Komatsu@yahoo.com

**CERTIFICATE OF COMPLIANCE WITH RULE 27(d)(2)**

I, Towaki Komatsu, certify that this motion contains 4,742  words and is 19 pages in length (excluding, as permitted by Fed. R. App. P. 32(f), the table of authorities, appended exhibits, and certificate of compliance), as counted by the Microsoft Word computer software used to prepare this motion.

I further certify pursuant to Fed. R. App. P. 27(d)(2) that the attached motion is proportionally spaced and has a typeface (Times New Roman) of 14 points.

Dated:        February 7, 2024

Towaki Komatsu

*Plaintiff, Pro Se*

55 West 110th St.
New York, NY 10026
Tel: 305-784-7450
E-mail: Towaki_Komatsu@yahoo.com